22-2178. And I'll just tell all council that as you get to the podium, go ahead and take your time getting comfortable and setting up the microphones, particularly with someone appearing remotely. It's very important that you speak clearly into the microphone so we can hear you. All right. We have Plaintiffs' Council for the State of New York with two minutes reserved for rebuttal. I believe two minutes are up. I think I have the wrong one. It says two minutes here. Oh, I apologize. Do we have the right ones here? Maybe not. Just a second. I think we may have the wrong slips. Unless your name is Christopher, we have the wrong ones. I didn't want to make any assumptions. But the names did not sound like the ones I recalled from the brief. All right. Let's try this again. Ms. Twynum, is that the pronunciation? You are one of the only people to get it right. All right. You've reserved three minutes. Perfect. For rebuttal. May it please the Court, Alexandria Twynum. On behalf of Plaintiff Appellant, the people of the State of New York, the District Court's decision concluding that plaintiff had not plausibly alleged harm to a substantial segment of the population, and thus that Perrin's patrie standing was inappropriate, was incorrect for at least four reasons. The first is that the District Court improperly focused on factual variance in the actual type of harassment experienced by the victim exemplars detailed in the complaint, rather than focusing on the consistent pattern of deliberate indifference that was displayed. May I ask you a question about that? I must say I'm puzzled that you refer to over 30 or more than 30 additional cases. And yet, I've never heard of a lawyer who, having something like that, didn't find some way to get it to us as an appendix, but you don't mention who they are anywhere. Is there a reason behind that? It struck me as odd, because it would at least appear to be something that strengthens the case. Yes, Your Honor. So there was an informal exchange of information without subpoena power between the parties before the suit was instituted. And so one of the things the Attorney General received were documents listing all complaints that had been documented by the school involving sexual assault harassment. Where did those papers, did the school? The school voluntarily turned those over, but with identities redacted pursuant to FERPA. I guess we'll ask them. The question is whether they concede that those are 30 such complaints or not. Absolutely, Your Honor. But even without those examples, no precedent of this Court has suggested that there has to be a pattern and a practice. I agree with you, but I was just kind of confused as to coming up with the name 30. If we had more time, I'd tell you a story about – it's called Manchurian Candidate. In the Manchurian Candidate, at some point there's a woman who's a 1950s anti-communist lady, and she says there are communists in the State Department. And this reporter, I guess, asks her, how many are there? And she looks around, and she sees a bottle of Heinz ketchup, and she says, 57. And that's how they come up with 57. I was kind of wondering where you came up with 30. We'll assume you're not Angela Lansbury for the Attorney General's Counsel. And also, just on that point, not so much the Angela Lansbury Manchurian Candidate point, but on the number, I believe the State had – one of the bases for the State's request to amend was to flesh out some of that information about the additional complaints. Yes, Your Honor. So there are facts that the Attorney General knows about each of those incidents, sort of what happened between the students and what steps, if any, were taken. But because the Attorney General had not been able to speak to any of those students, hadn't gotten FERPA waivers, anything like that, that was part of why specific facts were not alleged in the complaint. And because the Attorney General's Office did not believe they were needed under this Court's precedent for a parents' patria standing. But if allowed to amend, the Attorney General's Office certainly could provide more of those details, as well as detail in the request in the district court for permission to amend additional incidents that the Attorney General became aware of that post-date the incident with T.G. and helped to disprove sort of the district's allegations that the story of T.G. and what happened to her was a one-off incident. May I ask you another question? It won't be in the papers anywhere, but is this – is the State acting as parents' patria, if I said that? Is that a very common occurrence that goes on all the time, but usually is not resisted, or is it relatively rare? It's relatively rare. I mean, as far as I'm aware, this Court has only dealt with it in the 11 Cornwell case that we've cited. And even in the district court, there are only a handful of cases. Well, that's why I was asking. I was wondering whether that's because there are few situations in which you seek to be parents' patria, and they're not resisted, which is possible. Or there are relatively few, and that's why there are few cases. I didn't know whether I could link the two things. I think there are relatively few cases in which it's appropriate, and I think that's largely to do with the two other criteria for parents' patria standing that aren't at issue in this case, that there's a limited number of situations in which the State can prove both a quasi-sovereign interest and that the individuals who were harmed could not seek complete relief, that the State needs to jump in for something like that. In addition, the district court's decision was improper because it failed to account for all of the students and other community members who were harmed as an indirect effect of the district's inaction, as well as future harm that the district's inaction would cause. And under this court's precedent in 11 Cornwall, as well as the Supreme Court's precedent in SNAP, those indirect and future harms are a crucial part of the inquiry into whether a substantial segment of the population has been affected. And here, the Attorney General clearly alleged in the complaint at least two types of these indirect harms as well as future harms. First is a fear of safety that was experienced by particularly female students, but also by all members of the student population who knew that the district wouldn't do anything to protect them if they came forward and reported that some other students were abusing them. The second is the actual increased risk of harm. And this is something that's discussed in the 11 Cornwall case, that there are certain acts that if steps are not taken to rectify them and to show that that behavior will not be tolerated, bad actors are more likely in the future to continue to perpetuate these actions. And that is such a case with things like sexual harassment and gender-based bullying. In addition, the state alleged that there would be students harmed in the future. Every year, there are new students coming into each of the district schools. And as long as this pattern continues of the district refusing to take action, all of these students are also at risk. None of those were sort of conclusory or hypothetical as the district court improperly concluded. And fourth, as I started to say, it was improper to impose a requirement that a practice be shown at all. As this court's precedence in 11 Cornwall indicates, a single action, if it has a substantial enough effect, is itself enough to create parents patriae standing. Any one of the incidents, and certainly the four incidents of this victim exemplars, were sufficient to show that there were lingering effects in terms of emboldening bad actors to harass more students. In terms of the fear that was experienced by students and by their families, these were enough alone to give parents patriae standing. And when combined with the plausible allegations about 30 additional documented incidents, this was certainly enough to indicate that a substantial segment of the population was affected. It occurs to me that it's possible that the confusion is because if this were a Menel case, you would have to show a pattern of practice. And there have been parents patriae Menel cases in which the state did have to prove a pattern of practice. I think that's very, very much true, Your Honor. I also think that there may have been confusion about the step in which this case is at. This was only on judgment on the pleadings. And the allegations in the complaint are certainly sufficient to survive that stage. There's no doubt that at a future stage in the litigation, plaintiff would have to prove some of these allegations. But it was improper to disregard the allegations at this stage. I believe that's my time. If there are no further questions, I'll save the rest for rebuttal. Yes. Let me just check with Judge Cabranes. Any questions at this time? I'm fine. All right. Thank you, counsel. We'll hear from you soon in your rebuttal. All right. Counsel? Good morning, Your Honors, and may it please the Court. Daniel LaCour from Harris Beach on behalf of the Niagara-Wheatfield Central School District. The defect in the Attorney General's standing in this case is exemplified by its struggle to identify the discrete population that was impacted here, and also a common practice by the district. And I just want to jump right into the common practice point because I know it was focused on in my colleague's argument here. Even the complaint acknowledges or supports the inference that the district did not fail to respond here, or that the district was prevented from taking further steps because certain students left the district. So in T.G.'s case, they acknowledged that steps were taken to keep E.D. and T.G. apart, including ensuring that they had no classes together and their lock groups were far apart, and that E.D. was eventually expelled. In fact, they did such a good job that in the entire – Okay. When was E.D. expelled? At the end of the school year. After they graduated? I think it was before the graduation, but it was – But after the school year was complete? Yes. And how long was that after the incident of which T.G. complained? Nine months or so. Okay. Just confirming. Yes. And during that entire period, just illustrating how good of a job the district did keeping them apart, the only alleged incidents or encounters – The question is whether that's something for summary judgment or trial rather than something we can do here and now. Understood, Your Honor. And the point is that because there's no common pattern of inaction, all we have are allegations that the district didn't do enough. And that's necessarily a fact-by-fact, case-by-case inquiry. And that's what you need to establish, that there's an injury that's to a sufficiently substantial segment of the population and not just the exemplar cases that are identified. And this differentiates this case from all of the other cases where courts in this district have found standing. In those cases, it was clear from the pleadings that future individuals in similarly situated circumstances as exemplars would necessarily face the same type of discrimination. You know, for instance, in the 11 Cornwall or the support for ministries with persons with AIDS cases, it was necessarily the case that if a future person in similar situated attempted to build a house for the disabled, they'd face the same opposition that was present in those cases. In, for instance, the Peter and John's Pump House case, future African-American bar patrons would face resistance because of the pattern and practice that was being engaged in. But that thread's missing here. So essentially, what's been pleaded are four separate negligent supervision cases against the district. Plus the offer to show us 30 more if you need to. Your Honor, yes, I'll acknowledge the 30 additional. And I won't accept that these were incidents of gender-based bullying or of any characterization of them by the Attorney General. The district did identify instances of student-on-student bullying over a course of several years. And if you look at the pleading itself, it very carefully describes what their allegations are with regard to these other instances. The only focus is on a lack of documentation. They say the district did not create a single written safety plan or document any follow-up. They don't allege that any of these students, after the district was notified, faced any additional harassment. That's your reading of the amended complaint, that there's no allegation that once the district was notified of their situation, that all of the harassment, bullying, anything of which these students complained, stopped. Regarding the 30 additional. Regarding the 30 additional. Yes, and I'd submit that this is precisely why the Attorney General has not supplemented its pleading with these examples. Well, didn't the Attorney General move? This is the question I asked your colleague. They moved to amend and were denied leave to amend. They, in opposition to the report and recommendation, they, in one paragraph, requested leave to amend. They have not provided any sort of detail as to what would be stated. But how, in what context would they have done that? They can't bring that here and say, appeals court, here's what we'd like to do in the district court. That's not appropriate here. Typically, I mean, at least in my experience, where there's a motion for judgment on pleadings or a motion to dismiss, the opponent party will move for leave to amend and present, you know, a draft. I think compliant with most district courts' local rules requires a draft complaint to identify how the pleadings would solve any sort of issues that have been addressed. That wasn't done here. But I think the reason why it wasn't done here is because they can't allege with any commonality between the 30 cases like they couldn't with the four. I mean, these are very different situations. Obviously, the T.G. situation was extraordinary. And that's the, you know, I think the A.G. acknowledges that that's the reason why this case was commenced. And there's no similarity or through-line between the T.G. situation and the other three cases. Well, let's talk about that for a minute. So I think it depends on what level you assess the similarity from. So the state says these have a commonality in the sense that these all represent instances of gender-based victimization, bullying, harassment, assault, gender-based victimization across the student population. And they are very different factually. One way to look at that is your position, which is the factual differences weaken the claim that the school district has a sort of general problem with this. But another way of looking at it is, in fact, we have represented in just these four examples all three schools, the elementary, the middle, and the high school, and a period of years, and different kinds of conduct, according to the complaint, none of which was adequately addressed by the school district. So isn't there an argument that that diversity of gender-based problematic behavior, gender-based victimization, and failure to respond to it suggests a broader problem, as opposed to if they simply brought examples of people who had been sexually assaulted outside of school? I feel like then the school district would argue that's too narrow. That's not a sufficient segment of the population. The state is saying the whole school is affected by this, and here's some diversity of the problems that students have faced. Why isn't that even more persuasive, that diversity of time, school, and nature of complaint? Your Honor, I think it is a generalization issue. I do agree with you. But I think going back to what I said earlier, when you have disparate examples by which you're measuring whether or not the district responded adequately or not, that those cases that are clearly different from one another shapes the response that the district would necessarily make, taking all the factors into account. And because they're different, you can't draw any conclusion from these exemplars that tells you what the district would necessarily do in another situation affecting a broader group. In 11 Cornwell, wasn't there only one that they – it was a particular building that they were trying to get not to be used for whatever, handicapped people? And that was only one situation. They didn't even have four. They had one. And Judge Oaks, writing for the court, followed out the ripples from that and found that there was parent-patriarch standing. Yes, Your Honor. There was one group in that case, but I think the facts of that case are important. There was a conspiracy by, you know, a very large group of neighbors in a particular area, all with the goal to obstruct and, you know, exclude particular populations from their community. So while the actual persons directly affected by the exemplar in that case was small, it allowed the inference that's missing here that if a future group home of similar type came into the area, they'd face the same exclusion given the nature of the conspiracy that was at issue there. Just touching briefly on leave to amend. I think it's well established in this circuit that the district court was within its discretion in denying leave to amend where it had never been provided any clarity as to how precisely the pleadings would be supplemented. And I will just point out, I know there's been some argument about the 30 other examples. If you look actually at the opposition below in the specific request to amend, all the state indicated that it would add are incidents subsequent to the filing of the pleading. They never mentioned adding any additional information regarding the 30 other examples that they say exist. And I'll just say, and I'll reiterate that that's because, based on the facts of those, there's no allegation that they can make with regard to those 30 other incidents of student-on-student conduct that were identified that shows any sort of common practice by the district. Thank the court and ask that the court affirm the district court's decision. Thank you. Thank you, counsel. All right, counsel, you've reserved three minutes for rebuttal. I have two quick points I'd like to make and certainly any questions that the court may have. First, I'd like to respond to the district's argument that the pleading sort of is only, that our pleading only talked about a lack of documentation and not about further injuries that occurred to the 30 additional people. And I think that there are two important responses to that. One is that that information is uniquely within defendant's possession, and as this court's precedent in Arista Records, which is cited in our brief, indicates, there's a lower bar on what has to be pled when the plaintiff does not have access to certain information. But second, and perhaps more important, is that it's ultimately irrelevant whether any of these individuals in those 30 additional incidents experienced further harassment because of the injury that occurred both to those individuals in seeing nothing being done in response to them reporting harassment, and second, the indirect effects that those had on the rest of the student body and on the likelihood that further incidents would happen as a result of those harassers knowing that they got off scot-free. And those are the claims that have, that were ignored by the district court, are those sort of indirect and future injuries. The second thing, turning to leave to amend quickly, is that what the, what plaintiff actually said is that it would add further allegations regarding the district's policy and practice of deliberate indifference, which would include current students who had contacted the plaintiff since the filing of the first amended complaint. That was enough information given the basis on which the district court dismissed this case, saying we will fill in more for you about the policy and practice that you don't think has this through line, even though that is not a requirement for parents patria standing, would in fact, was enough information for justice to require giving leave. Certainly there has never been an allegation in this case, there wasn't below, that amendment would have been futile, that it would have unduly delayed the case or burdened the district, or that plaintiff had in some way acted in bad faith. And contrary to the precedence that were cited by the district court and by defendants on this issue, such as Techno Marine, those are cases in which genuinely, no information was given about what would have been put in the amendment, where plaintiff said something along the lines of, if there are any defects, we'll cure them. This was not that case. This was very clear about what they would add, even if defendant wishes that we had given more details about exactly what each of those allegations would have looked like. I take it you would prefer that we rule in your favor without allowing you to amend the complaint. We would love for you to rule in our favor on any basis, but yes, we would prefer for you to just find that parents patria standing was proper on the facts as they were already given. If there are no additional questions. Thank you, counsel. All right. Thank you both for your excellent arguments.